# REVIEWERS, INC.
*vs.*
# J. W. FAITH

Court of Common Pleas    Litchfield County    File #7208

## MEMORANDUM FILED DECEMBER 6, 1938.

Shannon & Wilder, of Bridgeport, for the Plaintiff.

Joseph P. O'Connell, of Bristol, for the Defendant.

SEYMOUR, J.   This action is brought to recover the balance claimed to be due on a contract granting to the defendant a license to operate "Entertainment Nights" at his moving picture theater in Terryville, Conn.   The license permitted the defendant to use a plan owned and copyrighted by the plaintiff, a New Jersey corporation, which plan is described *in extenso,* in the contract.   To summarize:   Having purchased a right to use the plan, the licensee exhibited once each week a motion picture and anyone, who had previously signed the appropriate numbered application blank, could, if his name was duly drawn from a container on the stage, sign a so-called "Employment Contract" with the theater whereby he or she agreed to criticize any picture exhibited in the defendant's theater during the following week and prior to the next "Entertainment Night"; and if such written criticism was made and delivered to the theater owner, the reviewer was entitled to receive the sum of $25.   It is to be noted, however, that the theater reserved the right, as expressed in its advertisement, to refuse to grant to the winner of the lucky number the right to review a picture, in their absolute discretion, the condition

being thus stated: "4. The selection of reviewer rests with the management, and all decisions are final." This refusal, it was testified upon the trial, was exercised in the event that the person holding the lucky number was palpably illiterate, or it would seem, for any other reason deemed sufficient by the management.

In the event that the theater management was not willing to enter into any "Employment Contract" with the holder of the lucky number, the $25 was added to a like sum on the second "Entertainment Night" and the winner who performed the "Employment Contract" was entitled to $50. From the testimony it would appear that this prize money might be doubled in this manner so long as the theater owner desired to do so. In this case, however, this feature is unimportant as only one "Entertainment Night" was held at this Terryville theater.

Application blanks with numbered stubs were placed in the lobby of the theater and the signator need not purchase an admission to attend a performance to permit him to sign the application blank, also the holder of the lucky number at any subsequent performance (within the week) was admitted free, but of course he was required to attend some one performance during the succeeding week to enable him to win the prize money by submitting a critique. There was also a second prize, the winner of which simply received $10 if he held the second lucky number drawn from the container, who, if the holder of the first number drawn was not acceptable to the theater management, could sign the "Employment Contract." It did not appear from the evidence, however, that the winner of the second prize was entitled to anything more than the second prize money of $10.

The price the theater owner paid the plaintiff for this contract was $260, payable in 26 instalments of $10 each. In the instant case the defendant paid the first instalment but refused to pay more and stopped the "Entertainment Nights" on the advice of someone who told him that such "Entertainment Nights" were an attempted evasion of the law and therefore illegal.

It is for this balance of $250 that the plaintiff brings this action and the defendant sets up the special defense that the plan was illegal and he was therefore justified in cancelling his contract.

It will be apparent that the principal feature in which this case differs from the facts upon which the *Dorau* case was recently decided in our Supreme Court of Errors *(State vs. Dorau,* 124 Conn. 160, 198 Atl. 573) is that the holder of the lucky number on "Entertainment Night" signed a contract, which reads as follows:

### "CONTRACT.

| | | |
|---|---|---|
| Between | Reviewer, | And |

### MAYFAIR THEATRE, TERRYVILLE, CONN.

I, the undersigned, do hereby agree to attend a performance of photoplay, title

at the MAYFAIR THEATRE on

the        day of        193

and agree to submit to the management of said theatre, my views in the form of a review of said photoplay, for which I am to receive the sum of        Dollars, providing such review is delivered by me, at said theatre on the

day of        193 .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Signature of Reviewer)

ACCEPTED

. . . . . . . . . . . . . . . . . . . . . . .

For MAYFAIR THEATRE"

Despite the protestation of plaintiff's New England representative that this "Employment Night" plan was for the enlightenment of the producers of motion pictures, and only incidentally would it result in increased earnings to the theater owner, the impression made on the Court was that no theater owner would invest a penny in the plan, or put up any prize money, if he did not confidentally expect thereby to increase his receipts. It is imposing too much on the credulity of human nature to suppose that the owner of the moving picture house was aesthetically interested in improving the character or tone of the picture, or the taste of his audience. It is too well known for the Court to ignore the fact, that pictures are parcelled out to theaters and that the owners or operators of the theaters have little or nothing to say as to the character of pictures they receive. Granted as the plaintiff's witness testi-

fied, that by reading the criticism of patrons of the defendant's theater, the motion picture producers could learn the kind of pictures Terryville audiences enjoyed, it requires too great a stretch of imagination to believe that even if the motion picture producers ever read the criticism they would change the character of their pictures. The distributors of films, in this neighborhood, might do so, but this was not suggested by the witness.

If this testimony is coupled with the fact that a simple statement "I like the picture", or the opposite, was all the criticism required to entitle the holder of the lucky number to receive the prize money, it is obvious, I think, that the plan of "Entertainment Night" was only of value to the theater owner. If the Court is correct in this conclusion, there was nothing of value given by the promisee for the prize offered by the promissor in the so-called "Employment Contract." It follows from this that the contract which furnished the supposed consideration was a subterfuge to gain something of worth for nothing of value, and that, to offer such a pretended contract was against public policy and within the inhibition of the so-called lottery statutes of our State, as illumined by the opinion of the Supreme Court of Errors in *State vs. Dorau, supra.*

As a general proposition of law, to constitute a lottery there must exist the three elements of a consideration, a prize and a chance. As our Supreme Court has interpreted section 6332 of the General Statutes, Revision of 1930, in the *Dorau* case, (124 Conn. 160, 168; 198 Atl. 573, 577) it has a broader scope, viz., it "prohibits not merely lotteries in the strict sense of the term, but certainly covers enterprises of the general nature of lotteries wherein chance is the predominating element", referring particularly to the contention that in bank night cases, as also in the instant case, the person whose lucky number is drawn, does not have to pay for his admission to the theater. This fact the Supreme Court holds does not mitigate against the operation of the statute.

The issues are found for the defendant.

Let judgment enter therefor together with costs.